## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| David J. Rebein, Daniel B. Giroux, Judy Krueger, and Michael T. Jilka, individually and on behalf of all others similarly situated, ) ) ) ) ) | Case No. 23-CV-1245 |
| *Plaintiffs* ) ) | |
| v. ) ) | |
| BP Canada Energy Marketing Corp., BP Energy Company, Chevron Natural Gas, a division of Chevron USA, Inc., ETC Marketing, Ltd., and Macquarie Energy LLC ) ) ) ) ) ) | |
| *Defendants* ) ) ) | |

## CLASS-ACTION COMPLAINT

Plaintiffs, David J. Rebein, Daniel B. Giroux, Judith Krueger, and Michael T. Jilka, individually and on behalf of a class of similarly situated residents of Kansas (the Black Hills residential class), bring this class action under the Kansas Consumer Protection Act[1] against Defendants, BP Canada Energy Marketing Corp., BP Energy Company, Chevron Natural Gas, a division of Chevron USA, Inc., ETC Marketing, Ltd., and Macquarie Energy LLC.

### Introduction

1.    Among other prohibitions, the Kansas Consumer Protection Act (the Act) makes it unlawful for suppliers to: (1) induce consumers into transactions that are excessively one-sided; or (2) profiteer from a disaster.

---

[1] *See* K.S.A. 50-623, *et seq.*; K.S.A. 50-6,106.

2.      In February 2021, Winter Storm Uri brought sustained and extreme cold weather to Kansas, causing Governor Laura Kelley to proclaim a state of disaster.

3.      At the same time, Defendants—all suppliers of natural gas to Kansas natural-gas distributors—charged prices that exceeded more than 100 times, and on one day, more than 200 times, the price of natural gas before Winter Storm Uri hit the State of Kansas.

4.      Plaintiffs accordingly bring these claims to recover damages as a result of Defendants' unconscionable practices.

**Parties**

5.      Plaintiff, David J. Rebein, is a resident of Dodge City, Kansas, and is a Kansas consumer, as that term is defined in the Act. Mr. Rebein buys and uses the natural gas that Defendants produce and supply to Black Hills/Kansas Gas Utility Company, LLC (Black Hills) for personal, family, and household needs, including home heating.

6.      Plaintiff, Daniel B. Giroux, is a resident of Wichita, Kansas, and is a Kansas consumer, as that term is defined in the Act. Mr. Giroux buys and uses the natural gas that Defendants produce and supply to Black Hills for personal, family, and household needs, including home heating.

7.      Plaintiff, Judith Krueger, is a resident of Lawrence, Kansas, and is a Kansas consumer, as that term is defined in the Act. Ms. Krueger buys and uses the natural gas that Defendants produce and supply to Black Hills for personal, family, and household needs, including home heating.

8.      Plaintiff, Michael T. Jilka, is a resident of Lawrence, Kansas, and is a Kansas consumer, as that term is defined in the Act. Mr. Jilka buys and uses the natural gas that Defendants

2

produce and supply to Black Hills for personal, family, and household needs, including home heating.

9.     Defendant BP Canada Energy Marketing Corp. is a for-profit corporation organized in Delaware with its principal place of business in Nebraska. At all relevant times, BP Canada Energy Marketing Corp. produced and sold natural gas to Plaintiffs through Black Hills. BP Canada Energy Marketing Corp. was aware that the natural gas it sold to Black Hills was primarily used to service the residential consumer market in Kansas.

10.     Defendant BP Energy Co. is a for-profit corporation organized in Delaware with its principal place of business in Texas. At all relevant times, BP Energy produced and sold natural gas to Plaintiffs through Black Hills. BP Energy was aware that the natural gas it sold to Black Hills was primarily used to service the residential consumer market in Kansas.

11.     Defendant Chevron Natural Gas is a division of Chevron USA, Inc. Chevron USA is a for-profit corporation organized in California with its principal place of business in Texas. Chevron Natural Gas produced and sold natural gas to Plaintiffs through Black Hills. Chevron Natural Gas was aware that the natural gas it sold to Black Hills was primarily used to service the residential consumer market in Kansas.

12.     Defendant ETC Marketing, Ltd., is a for-profit corporation organized in Texas with its principal place of business in Texas. At all relevant times, ETC Marketing produced and sold natural gas to Plaintiffs through Black Hills. ETC Marketing was aware that the natural gas it sold to Black Hills was primarily used to service the residential consumer market in Kansas.

13.     Defendant Macquarie Energy, LLC is a for-profit limited liability company organized in Delaware with its principal place of business in Texas. At all relevant times, Macquarie Energy produced and sold natural gas to Plaintiffs through Black Hills. Macquarie

Energy was aware that the natural gas it sold to Black Hills was primarily used to service the residential consumer market in Kansas.

## Jurisdiction & Venue

14.     This Court has jurisdiction over plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum of $5,000,000 and is a class action in which a member of a class of plaintiffs is citizen of a State different from a defendant.

15.     This Court has personal jurisdiction over the defendants in this case because they engaged in sales of natural gas to distributors in Kansas that were ultimately paid for by Kansas consumers. For the same reason, venue is appropriate in the District of Kansas.

## General Allegations

### *The Natural Gas Market*

16.     Natural gas goes through three basic steps to reach retail users' and consumers' homes. First, natural-gas producers and suppliers drill wells to pump natural gas out of the ground to process and deliver natural gas to interstate pipelines. Second, interstate pipelines ship the gas from oil and gas fields to various cities and distribution points. Third, and finally, local distributors bring the gas from the pipelines and resell it to businesses and residential customers within their markets.

17.     Most producers and marketers of natural gas tie the price that they charge for natural gas to S&P Global's Platts market index (Platts). Platts is a price-reporting agency that, among thing things, collects data on natural-gas trades and publishes both daily and monthly price indexes for various trading locations for natural gas.

4

18.     The majority of natural-gas transactions are made based on Platts-indexed pricing. In 2019, for example, the Federal Energy Regulatory Commission (FERC) reported that 82% of traded volumes in the United States physical natural-gas market were made based on indexed pricing.[2]

19.     Though Platts verifies the information that traders report, reporting to Platts is voluntary. As a result, the number of trades that Platts verifies and relies on to establish its index prices is a fraction of the actual natural-gas trades that occur on any given day.

20.     Defendants in this case produce a substantial volume of natural gas and, through affiliated or unaffiliated marketers, enter agreements with local distributors to deliver a specific volume of natural gas in advance at a set price. Often, these transactions are made by reference to the "monthly price," or "First of the Month" price, which Platts publishes on the first day of each month. Platts determines the monthly price by calculating a volume-weighted average of all transactions submitted to Platts during the last three trading days of the previous month.

21.     When local distributors need additional gas, they buy that additional gas from producers and suppliers at the "spot price," or "daily index price," which is the prevailing market rate at the time of purchase. In "spot" transactions, buyers "nominate" the volume of natural gas that they will need for the next day.

22.     Platts calculates the daily index by reviewing each day's reported, qualifying trades for next-day delivery and calculating the volume-weighted average price of those transactions.

---

[2] *See* Actions Regarding the Commission's Policy on Price Index Formation and Transparency, and Indices Referenced in Natural Gas and Electric Tariffs, 85 Fed. Reg. 83940, at 83941 (Dec. 23, 2020).

When Platts reports the daily, "spot" price, it reports: (1) the midpoint; (2) the common range; and (3) the absolute range of reported transactions.[3] Most spot purchases are tied to the midpoint.

23.    Platts does not update its daily index price on weekends or holidays. Thus, if a holiday falls on a Monday, the Platts index remains the same through the weekend and holiday.[4]

24.    Platts' index pricing is also location specific. Relevant here, Platts reports seven index prices at which Black Hills purchases natural gas: (1) CIG, Rockies; (2) Enable Gas; (3) NGPL, Midcontinent; (4) Northern Natural Gas, demarcation; (5) Northern Natural Gas, Ventura; (6) Panhandle Eastern; and (7) Southern Star Central Gas Pipeline (collectively, the Black Hills indexes).[5]

### Distributors in Kansas

25.    The pipelines and locations listed above deliver natural gas to numerous distributors in Kansas that purchase gas from Defendants based on the Platts index prices, either directly or through marketers, and ultimately distribute that gas to Kansas residents' homes.

26.    Black Hills serves approximately 115,000 customers in Kansas.

27.    In forecasting the volume of natural gas that a distributor will need in any given month, distributors like Black Hills rely heavily on historical usage and weather data.  Typically, as temperatures drop in the winter, residential users consume more natural gas to heat their homes.

---

[3] *See* S&P Global Platts, *Methodology and Specifications Guide: US & Canada Natural Gas* 4 (2023), *available at* https://www.spglobal.com/commodityinsights/plattscontent/_assets/_files/en/our-methodology/methodology-specifications/na_gas_methodology.pdf.

[4] *See id.*

[5] *See* Direct Testimony of Kent J. Kopetzky on Behalf of Black Hills/Kansas Gas Utility Company, LLC, d/b/a Black Hills Energy, *In the Matter of the Investigation into Black Hills/Kansas Gas Utility Company, LLC, d/b/a Black Hills Energy, Regarding the February 2021 Winter Weather Events as Contemplated by Docket No. 21-GIMX-303-MIS*, Docket No. 21-BHCG-334-GIG, at 11, 15 (Kan. Corp. Comm'n Jun. 16, 2021) (hereinafter "Kopetzky Testimony").

28.     To make a profit, distributors like Black Hills include the cost of the natural gas in the ultimate price that they charge their customers. As a result, retail end-users bear the ultimate cost for the natural gas that producers, like Defendants, produce and sell to distributors in Kansas.

### *Winter Storm Uri*

29.     On February 1, 2021, the First of the Month prices for the Black Hills indexes were[6]:

> (1) CIG, Rockies: $2.565;
>
> (2) Enable Gas: $2.570;
>
> (3) NGPL, Midcon: $2.555;
>
> (4) Northern Natural Gas, demarcation: $2.615;
>
> (5) Northern Natural Gas, Ventura: $2.600;
>
> (6) Panhandle Eastern: $2.550; and
>
> (7) Southern Star Central Gas Pipeline: $2.545.

30.     Around February 3, 2021, Kansas regional weather reports began predicting colder weather through February 20, and the spot price for natural gas made modest increases. By February 6, the spot price for natural gas in the Black Hills indexes had risen to between $3.335 and $3.845 MMBtu[7].

31.     Around the same time, Winter Storm Uri approached and temperatures in Kansas started to deviate substantially from their historical averages. In Wichita, Kansas, for example, the National Weather Service reported the following daily average temperatures and their departure from historical averages[8]:

---

[6] *Id.* at 19. MMBtu is a measure of volume of natural gas expressed in millions of British thermal units.
[7] *Id.*
[8] *See Monthly Station Data [F6]*, Nat'l Weather Serv., www.weather.gov/ict/f6form (choose "2021" from "Year" dropdown and "February" from "Month" dropdown; then click "Retrieve").

| Date | Daily Average Temperature (Wichita, KS) | Historical Average (Wichita, KS) | Departure From Historical Average (Wichita, KS) |
|---|---|---|---|
| 2/6/2021 Saturday | 26 | 35 | -9 |
| 2/7/2021 Sunday | 16 | 35 | -19 |
| 2/8/2021 Monday | 13 | 35 | -22 |
| 2/9/2021 Tuesday | 12 | 35 | -23 |

32.     At the same time, the Black Hills indexes stayed relatively steady[9]:

| Date | CIG, Rockies | Enable Gas | NGPL, Midcon | Northern Natural Gas, demarcation |
|---|---|---|---|---|
| 2/6/2021 Saturday | $3.490 | $3.430 | $3.335 | $3.780 |
| 2/7/2021 Sunday | $3.490 | $3.430 | $3.335 | $3.780 |
| 2/8/2021 Monday | $3.490 | $3.430 | $3.335 | $3.780 |
| 2/9/2021 Tuesday | $3.395 | $3.355 | $3.330 | $3.715 |

| Date | Northern Natural Gas, Ventura | Panhandle Eastern | Southern Star Central Gas Pipeline |
|---|---|---|---|
| 2/6/2021 Saturday | $3.845 | $3.515 | $3.560 |
| 2/7/2021 Sunday | $3.845 | $3.515 | $3.560 |
| 2/8/2021 Monday | $3.845 | $3.515 | $3.560 |
| 2/9/2021 Tuesday | $4.200 | $3.525 | $3.655 |

---

[9] *See* Kopetsky Testimony at 19.

33.    From Wednesday, February 10, 2021 through Saturday, February 13, cold temperatures continued to deviate from their historical norm in Kansas:

| Date | Daily Average Temperature (Wichita, KS) | Historical Average (Wichita, KS) | Departure From Historical Average (Wichita, KS) |
|---|---|---|---|
| 2/10/2021 Wednesday | 14 | 36 | -22 |
| 2/11/2021 Thursday | 14 | 36 | -22 |
| 2/12/2021 Friday | 7 | 36 | -29 |
| 2/13/2021 Saturday | 8 | 36 | -28 |

34.    At the same time, the Black Hills indexes increased in historic and dramatic fashion[10]:

| Date | CIG, Rockies | Enable Gas | NGPL, Midcon | Northern Natural Gas, demarcation |
|---|---|---|---|---|
| 2/10/2021 Wednesday | $3.460 | $3.500 | $3.345 | $3.855 |
| 2/11/2021 Thursday | $4.825 | $6.105 | $4.920 | $6.605 |
| 2/12/2021 Friday | $13.285 | $34.385 | $11.830 | $15.680 |
| 2/13/2021 Saturday | **$172.945** | **$375.810** | **$206.110** | **$231.670** |

| Date | Northern Natural Gas, Ventura | Panhandle Eastern | Southern Star Central Gas Pipeline |
|---|---|---|---|
| 2/10/2021 Wednesday | $4.055 | $3.675 | $4.030 |
| 2/11/2021 Thursday | $6.905 | $6.310 | $9.620 |
| 2/12/2021 | $15.415 | $14.545 | $44.780 |

---

[10] *Id.*

| Friday 2/13/2021 Saturday | $154.905 | $224.560 | $329.595 |
|---|---|---|---|

35.     On February 14, 2021, Governor Kelly declared a state of emergency over the sustained and extreme cold weather that Kansans were facing, stating that "[l]ow temperatures with sub-zero wind chills *over the past several days* accompanied by snow, sleet, and freezing rain across the state have caused stress on energy infrastructure."[11]

36.     The next day, the Kansas Corporation Commission entered an order directing all jurisdictional natural-gas utilities "to do all things possible and necessary to ensure natural gas . . . services continue to be provided to their customers in the State."[12]

37.     In response, natural-gas distributors in Kansas made substantial purchases of natural gas at the prevailing spot price to ensure their storages of natural gas would not run low.

38.     From February 14 to 16,  temperatures continued to depart even more substantially from their historical averages:

| Date | Daily Average Temperature (Wichita, KS) | Historical Average | Departure From Historical Average (Wichita, KS) |
|---|---|---|---|
| 2/14/2021 Sunday | -1 | 37 | -38 |
| 2/15/2021 Monday[13] | -5 | 37 | -42 |
| 2/16/2021 Tuesday | -3 | 37 | -40 |

---

[11] *See* Kansas Executive Department, *State of Disaster Emergency Proclamation* (Feb. 14, 2021), *available at* https://governor.kansas.gov/wp-content/uploads/2021/02/2-14-2021-Extreme-Weather-Disaster-Declaration-Executed.pdf (emphasis added).

[12] Emergency Order, *In the Matter of Record Natural Gas Prices and Potential System Reliability Issues from Unprecedented and Sustained Cold Weather*, Docket No. 21-GIMX-303-MIS, at 3 ¶ B (Kan. Corp. Comm'n, February 15, 2021).

[13] Monday, February 15, 2021, was President's Day, a federal holiday.

39.     However, February 13, 2021 was a Saturday; February 14, 2021 was a Sunday; and the following Monday, February 15, 2021, was President's Day, a federal holiday. Most Black Hills indexes thus remained at historically high prices through the holiday weekend and into the next day[14]:

| Date | CIG, Rockies | Enable Gas | NGPL, Midcon | Northern Natural Gas, demarcation |
|---|---|---|---|---|
| 2/14/2021 Sunday | $172.945 | $375.810 | $206.110 | $231.670 |
| 2/15/2021 Monday | $172.945 | $375.810 | $206.110 | $231.670 |
| 2/16/2021 Tuesday | $78.200 | $375.810 | $206.110 | $231.670 |

| Date | Northern Natural Gas, Ventura | Panhandle Eastern | Southern Star Central Gas Pipeline |
|---|---|---|---|
| 2/14/2021 Sunday | $154.905 | $224.560 | $329.595 |
| 2/15/2021 Monday | $154.905 | $224.560 | $329.595 |
| 2/16/2021 Tuesday | $154.905 | $224.560 | $329.595 |

40.     On Wednesday, February 17, 2021, cold temperature began to ease in Kansas:

| Date | Daily Average Temperature (Wichita, KS) | Historical Average (Wichita, KS) | Departure From Historical Average (Wichita, KS) |
|---|---|---|---|
| 2/17/2021 Wednesday | 16 | 38 | -22 |
| 2/18/2021 Thursday | 17 | 38 | -21 |

---

[14] See Kopetsky Testimony at 19.

41.     Nonetheless, Platts released its updated spot pricing for February 17, 2021, and February 18, 2021, that showed numerous Black Hills indexes spiraling upward[15]:

| Date | CIG, Rockies | Enable Gas | NGPL, Midcon | Northern Natural Gas, demarcation |
|---|---|---|---|---|
| 2/17/2021 Wednesday | $19.525 | $300.000 | **$381.480** | $133.635 |
| 2/18/2021 Thursday | $5.785 | **$428.640** | $22.595 | $26.945 |

| Date | Northern Natural Gas, Ventura | Panhandle Eastern | Southern Star Central Gas Pipeline |
|---|---|---|---|
| 2/17/2021 Wednesday | **$188.320** | $129.385 | **$622.785** |
| 2/18/2021 Thursday | $19.460 | $23.390 | $44.530 |

42.     By comparison, for February 17, 2021, the S&P Global Platts-Gas Daily reported that the national average for natural gas was $79.40.

43.     Further, as the price for natural gas skyrocketed, natural-gas suppliers to distributors throughout Kansas began to make force-majeure declarations in their existing agreements with those distributors to deliver the natural gas to other distributors at the higher spot price.

44.     Indeed, on numerous occasions, and for nearly every distributor in Kansas, natural-gas suppliers relied on Winter Storm Uri to declare force majeure on their agreements to deliver a particular volume of natural gas to Kansas distributors at the monthly price. Those suppliers would

---

[15] *See* Kopetsky Testimony at 19.

then turn around and sell the same natural gas to other distributors who needed to fill or top off their natural-gas storage at the exponentially higher spot price.

45.     Those force-majeure declarations were false. Though demand for natural gas during Winter Storm Uri did increase, distributors in Kansas did not run out of natural gas. Indeed, though numerous distributors and producers relied on stored natural gas, the Southern Star Central Gas Pipeline never lost pressure during Winter Storm Uri, nor did the incremental gas going into the Southern Star Central Gas Pipeline increase in any significant measure.

46.     As a result, the supply of gas throughout Winter Storm Uri did not significantly change, nor did the Southern Start Central Gas Pipeline ever reach a point where it could not deliver the volume of natural gas that had been nominated by its customer-users or distributors. Regardless, natural-gas suppliers seized on Winter Storm Uri to redirect a substantial volume of natural gas that it had agreed to sell at lower prices and send the same gas to make spot sales to distributors, including Black Hills, at prices in excess of $300, $400, and $600.

47.     On February 19, 2021, temperatures returned closer to their historical averages:

| Date | Daily Average Temperature (Wichita, KS) | Historical Average (Wichita, KS) | Departure From Historical Average (Wichita, KS) |
|---|---|---|---|
| 2/19/2021 Thursday | 21 | 38 | -17 |
| 2/20/2021 Friday | 29 | 39 | -10 |
| 2/21/2021 Saturday | 39 | 39 | 0 |
| 2/22/2021 Sunday | 44 | 39 | 5 |
| 2/23/2021 Monday | 48 | 40 | 8 |

48.     Only then did the Black Hill indexes similarly return to their normal levels[16]:

| Date | CIG, Rockies | Enable Gas | NGPL, Midcon | Northern Natural Gas, demarcation |
|---|---|---|---|---|
| 2/19/2021 Thursday | $3.655 | $34.450 | $6.345 | $6.050 |
| 2/20/2021 Friday | $3.655 | $4.550 | $4.045 | $3.990 |
| 2/21/2021 Saturday | $3.655 | $4.550 | $4.045 | $3.990 |
| 2/22/2021 Sunday | $3.655 | $4.550 | $4.045 | $3.990 |
| 2/23/2021 Monday | $2.665 | $2.695 | $2.660 | $2.660 |

| Date | Northern Natural Gas, Ventura | Panhandle Eastern | Southern Star Central Gas Pipeline |
|---|---|---|---|
| 2/19/2021 Thursday | $5.980 | $6.265 | $7.945 |
| 2/20/2021 Friday | $3.735 | $4.010 | $4.385 |
| 2/21/2021 Saturday | $3.735 | $4.010 | $4.385 |
| 2/22/2021 Sunday | $3.735 | $4.010 | $4.385 |
| 2/23/2021 Monday | $2.675 | $2.590 | $2.690 |

49.     In its testimony to the Kansas Corporation Commission, Black Hills reported that every single index far outpaced the prices it had seen in the Black Hills indexes in the last 10 years[17]:

---

[16] *See* Kopetsky Testimony at 19
[17] *Id.* at 15.

## Table KJK-1: Historical Maximum Daily Midpoint Price

| | | CIG, Rockies | Enable Gas | NGPL, Midcon | Northern Natural Gas, demarcation | Northern Natural Gas, Ventura | Panhandle Eastern | Southern Star Central Gas Pipeline |
|---|---|---|---|---|---|---|---|---|
| Natural Gas price index location | | | | | | | | |
| Feb 2021 Event period 2/7-2/19 (2021): Maximum mid price | | $ 172.945 | $ 428.640 | $ 381.480 | $ 231.670 | $ 188.320 | $ 224.560 | $ 622.785 |
| | Date | 2/13-2/16/2021 | 2/18/2021 | 2/17/2021 | 2/13-2/16/2021 | 2/17/2021 | 2/13-2/16/2021 | 2/17/2021 |
| 10+ yr period 1/1/2011-3/31/2021 (EXCLUDING 2/7-2/19/2021): Maximum mid price | | $ 25.470 | $ 22.680 | $ 23.050 | $ 34.950 | $ 67.455 | $ 32.855 | $ 31.265 |
| | Date | 2/6/2014 | 2/6/2014 | 2/6/2014 | 2/6/2014 | 12/29/2017 | 2/6/2014 | 2/6/2014 |

### *Residents Bear the Cost of Winter Storm Uri*

50.     In the Kansas Corporation Commission's (the Commission's) February 14, 2021, order that directed distributors "to do all things possible and necessary to ensure natural gas . . . services continue" during Winter Storm Uri, the Commission further ordered that "[e]very . . . natural gas distribution utility that incurs extraordinary costs . . . is authorized to defer those costs to a regulatory asset account."[18]

51.     Black Hills accordingly deferred the extraordinary costs it incurred during Winter Storm Uri.

52.     On January 27, 2022 the Commission approved a settlement agreement with Black Hills that allows Black Hills to recover from their customers the approximately $87.9 million in extraordinary costs that it incurred as a result of Defendants' pricing during Winter Storm Uri.[19]

---

[18] Emergency Order, *In the Matter of Record Natural Gas Prices and Potential System Reliability Issues from Unprecedented and Sustained Cold Weather*, Docket No. 21-GIMX-303-MIS, at 3 ¶ D (Kan. Corp. Comm'n, February 15, 2021).

[19] Order Approving Unanimous Settlement Agreement, *In the Matter of the Investigation into Black Hills Kansas Gas Utility Company d/b/a Black Hills Energy Regarding the February 2021 Winter Weather Events, as Contemplated by Docket No. 21-GIMX-303-MIS*, Docket No. 21-BHCG-334-GIG, at 2 ¶ 5, 10 (Kan. Corp. Comm'n Jan. 27, 2022).

53.     The settlement allowed Black Hills to recover the approximately $87.9 million in extraordinary costs over a five-year period between February 2022 and January 2027.[20] The same order allowed Black Hills to recover the extraordinary costs on a volumetric basis.[21]

54.     Thus, through January 2027, Black Hills expects that its residential customer bills will increase by $11.47 per month.[22] The additional surcharge from Winter Storm Uri must also appear as a separate line item on its customers' bills.[23]

55.     Defendants profited handsomely from the incredible costs that the Kansas consumers must now pay for natural gas during Winter Storm Uri.

56.     For example, Reuters reported on February 21, 2021, that Macquarie reaped "big profits off the winter storms sweeping across Texas and other U.S. states, with the gains from its trading operations single-handedly changing the Australian bank's outlook for the year."[24] The article went on to report that Macquarie traded "large quantities of gas to meet unexpected consumer demand, and could boost the bank's overall profit by about . . . $317 million[.]"[25]

57.     Similarly, BP Energy "[r]eported profit" for the first fiscal quarter of 2021 at "$4.7 billion, compared with $1.4 billion profit for the fourth quarter 2020."[26]

**Class Allegations**

58.     In addition to bringing these claims on behalf of themselves, Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a class defined as:

---

[20] *Id.* Ex. A at 5 ¶¶ 12, 13.
[21] *Id.* at 3-5 ¶ 9.
[22] *Id.*
[23] *Id.* Ex. A at 6 ¶ 16.
[24] Paulina Duran & Jonathan Barrett, *Australia's Macquarie reaps windfall profits from U.S. winter freeze*, REUTERS (Feb. 21, 2021), *available at* https://www.reuters.com/article/us-macquarie-group-outlook/australias-macquarie-reaps-windfall-profits-from-u-s-winter-freeze-idUSKBN2AM01O.
[25] *Id.*
[26] BP p.l.c., *BP p.l.c. Group results, First quarter 2021*, at 2 (Apr. 27, 2021), *available at* https://www.bp.com/content/dam/bp/business-sites/en/global/corporate/pdfs/investors/bp-first-quarter-2021-results.pdf.

all residential customers whose utilities were served by Black Hills who must pay for the natural gas Defendants sold through Black Hills, between February 10, 2021, and February 18, 2021.

59.    Class certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(1), (b)(2), or (b)(3).

60.    The class satisfied the numerosity requirement because it is composed of thousands of persons in numerous cities throughout Kansas.

61.    Black Hills has thousands of residential customers, all of which suffered and will continue to suffer from the unconscionable prices that Defendants charged during Winter Storm Uri.

62.    The number of class members is so large that joinder of all its members is impracticable.

63.    There are questions of law and fact common to the class and these questions predominate over questions affecting only individual class members.

64.    Common legal and factual questions include, but are not limited to:

    a.    Whether Defendants supplied natural gas to Black Hills during Winter Storm Uri.

    b.    Whether Defendants charged Black Hills unconscionable prices during Winter Storm Uri, which Black Hills passed through to the class.

    c.    Whether Defendants profiteered from Winter Storm Uri by charging unconscionable prices to Black Hills, which Black Hills passed through to the class.

    d.    Whether Plaintiffs must ultimately bear the cost of the natural gas for which Defendants charged unconscionable prices.

17

65.    Plaintiffs' claims are typical of the claims of the members of the class because their claims, and the claims of all class members, arise out of the same conduct of Defendants as alleged herein, and all members of the class are similarly affected by Defendants' wrongful conduct.

66.    Plaintiffs will fairly and adequately represent the class and have retained counsel competent in the prosecution of Kansas Consumer Protection Act litigation.

67.    Plaintiffs have no interests antagonistic to those of other members of the class.

68.    Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

69.    Plaintiffs have standing to bring this action on behalf of the class because they are or during the class period were purchasers of natural gas from Defendants, through Black Hills, and were injured by Defendants' unlawful conduct.

70.    Plaintiffs are entitled to receive benefits in the amount of the difference between the value of natural gas at the pre-Winter Storm Uri rate and the unconscionable prices that Defendants charged.

71.    Class action status in this action is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by the members of the class would create a risk of establishing incompatible standards of conduct for Defendants.

72.    Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the class would create a risk of adjudications with respect to individual members of the class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

73.      In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted on grounds generally applicable to the class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the class as a whole.

74.      In the alternative, certification under Rule 23(b)(3) is warranted because questions of law or fact common to members of the class predominate over any questions affecting only individual members, and class-action treatment is superior to the other available methos for the fair and efficient adjudication of this controversy.

## Claims for Relief

### Count I: Violation of the Kansas Consumer Protection Act
### K.S.A. 50-627(b)

75.      Plaintiffs incorporate the preceding allegations in this count.

76.      Plaintiffs are "consumers" within the meaning of the KCPA because they purchased natural gas for personal, family, and household use.

77.      Defendants are "suppliers" within the meaning of the KCPA because they sold natural gas in the ordinary course of business to Plaintiffs, whether or not they dealt directly with Plaintiffs.

78.      Defendants' sale of natural gas during Winter Storm Uri was a "consumer transaction" under the KCPA because Defendants sold property to Plaintiffs within Kansas.

79.      During Winter Storm Uri, Defendants took advantage of Plaintiffs' inability to protect its interests.

80.      Similarly, when Defendants entered spot-price transactions during Winter Storm Uri, they charged a price that grossly exceeded the price at which similar natural gas was readily obtainable in similar transactions by similar consumers.

81.     Moreover, the sales of natural gas that Defendants made during Winter Storm Uri forced Plaintiffs to enter a transaction that was excessively one-sided in favor of Defendants.

82.     As a result of Defendants' unconscionable acts and practices, Plaintiffs have suffered damages. Specifically, the damages claimed are those amounts the Court determines to be unconscionable, together with the financing costs assessed as a result of those unconscionable charges, with total damages estimated to be in excess of $90 million, and with specific amounts to be assessed to the individual Defendants based on the charges made by each Defendant to Black Hills, which Black Hills passed through to its residential consumers.

### Count II: Violation of the Kansas Consumer Protection Act
### K.S.A. 50-6,106 – Profiteering from a Disaster

83.     Plaintiffs incorporate the preceding allegations in this count.

84.     Natural gas is "home heating fuel," and therefore a necessary property or service for Plaintiffs during a time of a disaster.

85.     The Governor of Kansas declared a state of emergency during Winter Storm Uri.

86.     Winter Storm Uri was a severe storm, and therefore a disaster within the meaning of the KCPA, that began before the Governor of Kansas declared a state of emergency.

87.     Defendants profiteered from a disaster within the meaning of the KCPA because they unjustifiably and substantially:

    a.  Increased the price they charged for natural gas by more than 25% than the price at which natural gas was available before the disaster;

    b.  Charged prices for natural gas during the disaster that was 25% more than the price at which natural gas was readily obtainable by other consumers; and

c.  Charged unjustifiably high prices for natural gas that were not attributable to any additional costs that Defendants incurred in connection with the sale of the product or service.

88.  As a result of Defendants' illegal profiteering, Plaintiffs have suffered damages. Specifically, the damages claimed are those amounts the Court determines that Defendants profiteered, together with the financing costs assessed as a result of those unconscionable charges, with total damages estimated to be in excess of $90 million, and with specific amounts to be assessed to the individual Defendants based on the charges made by each Defendant to Black Hills, which Black Hills passed through to its residential consumers.

## Count III: Violation of the Kansas Consumer Protection Act
### K.S.A. 50-634(e) – Attorney Fees

89.  Under K.S.A. 50-634, the Court may award consumers reasonable attorney fees where: (1) a supplier commits an act or practice that violates the Act; (2) the prevailing party is the consumer; and (3) an action under K.S.A. 50-634 has been terminated by a judgment or settled.

90.  Defendants are suppliers under the Act.

91.  Plaintiffs are consumers under the Act.

92.  In prosecuting this action, Plaintiffs have incurred, and will continue to incur, reasonable attorney fees.

93.  Upon prevailing in this class action under K.S.A. 50-634(d), the court may award plaintiffs' reasonable attorney fees.

94.  Plaintiffs request that, upon prevailing in this action, the Court award Plaintiffs the reasonable attorney fees that they have incurred for the work their attorneys have reasonably performed.

WHEREFORE, Plaintiffs request that judgment be entered against Defendants on all claims and request that the Court award the following relief:

A.  A determination that Plaintiffs may proceed on behalf of the class;

B.  A determination that this action may proceed as a class action under Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, Rule 23(b)(2) or, in the alternative, Rule 23(b)(3).

C.  Designation of Plaintiffs as class representatives and designation of Plaintiffs' counsel as class counsel;

D.  Actual damages in the amount of unconscionable costs that Defendants imposed on the class throughout Winter Storm Uri in violation of the Act;

E.  An award of pre-judgment interest;

F.  An award of costs under Federal Rule of Civil Procedure 54(d)(1);

G.  A service award to the class representatives;

H.  An award of attorney fees under K.S.A. 50-634; and

I.  Such other and further relief as the Court deems equitable and just.


Respectfully submitted,

FOULSTON SIEFKIN, LLP

*s/Jay F. Fowler*
Jay F. Fowler, KS #10727
Samuel J. Walenz, KS #29114
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
T: 316-291-9541 | F: 316-267-6345
jfowler@foulston.com
swalenz@foulston.com

Scott C. Nehrbass, KS# 16285
Lee M. Smithyman, KS# 09391
James P. Zakoura, KS# 07644
7500 College Blvd., Suite 1400
Overland Park, KS 66210
T: 913-484-4627 | F: 913-498-2101
snehrbass@foulston.com
lsmithyman@foulston.com
jzakoura@foulston.com

*Attorneys for Plaintiffs*